**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAIRO ABURAAD,

      Plaintiff,

v.                            Case No: 8:19-cv-2305-TPB-AAS

HAINES CITY, FLORIDA,

      Defendant.

_____ /

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on "Defendant Haines City, Florida's Motion for Final Summary Judgement and Incorporated Statement of Facts and Memorandum of Law," filed on June 11, 2021. (Doc. 34). Plaintiff filed a response in opposition on June 29, 2021. (Doc. 41). Defendant filed a reply on July 9, 2021. (Doc. 44). Based on the motion, response, reply, court file, and record, the Court finds as follows:

**Background**

In 2015, Plaintiff Jairo Aburaad was hired by Defendant Haines City, Florida, as a Service Worker in the Utilities Department. In 2015, Defendant promoted him to Plant Maintenance Worker, and he began installing water meters, filling in for a Meter Technician who had left Defendant's employment. Plaintiff was then promoted to Meter Technician and continued to install meters and perform other tasks required by that position. Plaintiff was born in Colombia and

Page 1 of 15

was 62 years old when Defendant hired him.  He alleges that Defendant discriminated against him during his employment based on his age and race or national origin by assigning him more difficult work than other, younger Meter Technicians of different races and by denying him a promotion.  Plaintiff also complains that a co-worker harassed him by calling him derogatory, xenophobic, or racist names.  On June 4, 2019, Plaintiff filed an EEOC charge complaining about this conduct.  He alleges that Defendant retaliated against him for this filing by giving him a negative annual performance evaluation and setting onerous goals not demanded of others.  In July 2019, Defendant began rotating duties between the different meter technicians; at the time of his deposition in September 2020, Plaintiff was satisfied with how Defendant was treating him.  Plaintiff voluntarily resigned from his employment with Defendant on May 24, 2021.

On September 16, 2019, Plaintiff filed suit asserting claims for discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA") and Title VII.  Defendant has moved for summary judgment.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A properly supported motion for summary judgment is not defeated by the existence of a factual dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only the existence of a genuine issue of material fact will preclude summary judgment.  *Id*.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).  If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).[1]

## Analysis

For the reasons discussed below, Defendant is entitled to summary judgment on Plaintiff's discrimination claims because Plaintiff has failed to establish a tangible adverse employment action or a hostile work environment.  Defendant is also entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff has not shown a materially adverse employment action and because Defendant has provided a legitimate, non-retaliatory reason for its actions.

---

[1] Defendant has moved to strike various statements in declarations by Plaintiff's co-workers.  (Doc. 45).  The Court will disregard conclusions and inadmissible hearsay in the declarations, but declines to strike them because they are largely cumulative of other evidence and do not change the analysis in this Order.  The Court also denies Plaintiff's request in its response that the Court strike Defendant's summary judgment motion.

### *Age and Race Discrimination*[2]

Title VII prohibits an employer from discriminating against individuals with respect to compensation, terms, conditions, or privileges of employment because of their race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  Prohibited discrimination includes both taking tangible adverse employment actions (such as hiring, firing, and promotion) and allowing the existence of a hostile work environment.  *See, e.g., Carter v. Cellco P'ship*, No. 8:15-cv-1033-T-17EAJ, 2016 WL 8981056, at *4 (M.D. Fla. Mar. 23, 2016).  The ADEA similarly prohibits discrimination based on an employee's age.  29 U.S.C. § 623(a)(1).

<u>Adverse Employment Action</u>

Claims of discrimination under Title VII and the ADEA are analyzed under the same legal framework.  *See, e.g., Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1562 n.14 (11th Cir. 1987) (explaining that Title VII and the ADEA share similar purposes and methods and that decisions under one statute serve as precedent under the other).  A prima facie case of discrimination requires a showing by the plaintiff that: (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified to perform the job; and (4) his employer treated "similarly situated" employees outside his class more favorably. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc).

---

[2]  Count I of the amended complaint asserts a claim for age discrimination under the ADEA.  Counts II and III assert only claims for retaliation under Title VII.  The parties' filings, however, assume that Plaintiff has also asserted a Title VII discrimination claim, and the Court will accordingly address this claim.

Defendant argues that Plaintiff has failed to present evidence sufficient to support a finding in his favor on an indispensable element of his claim – the existence of an adverse employment action. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1246 (11th Cir. 2001) ("Because adverse employment action is an indispensable element of a Title VII plaintiff's case, Davis's failure to present sufficient evidence for a reasonable jury to find that this element was met is fatal to his case."). An adverse employment action requires either an ultimate employment decision, such as hiring or firing, or other conduct that constitutes a serious and material change in the terms, conditions, or privileges of employment. *See Davis*, 245 F.3d at 1238-39 (Title VII); *Austin v. FL HUD Rosewood LLC*, 791 F. App'x 819, 825 (11th Cir. 2019) (ADEA). Conduct that does not rise to the level of an ultimate employment decision must still meet a threshold level of substantiality, going beyond the "ordinary tribulations of the workplace." *Davis*, 245 F.3d at 1239 (internal quotation omitted). The employee's subjective view of the employer's action is not controlling; the action must be materially adverse as viewed by a reasonable person under the circumstances. *Id.* at 1239-40.

The Eleventh Circuit has further cautioned that the adverse action requirement must be carefully applied where the plaintiff's claim is based on disagreement with the employer's work assignments. Such claims "strike at the very heart of an employer's business judgment and expertise" and "challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." *Id.* at 1244. It is therefore unusual for a change in work

assignments, without any tangible harm, to be "so substantial and material that it does indeed alter the 'terms, conditions, or privileges of employment.'" *Id.* at 1245; *see also Morton v. Astrue*, 380 F. App'x 892, 894 (11th Cir. 2010) (explaining that changes in assignments will not constitute adverse employment action "'in the vast majority of instances") (quoting *Davis*, 245 F.3d at 1245).

Plaintiff complains that he was assigned more difficult tasks such as installing meters while other, younger employees outside his protected class were given easier tasks. He further complains that he received a poor performance review in 2019, and that in that same review he was given the goals of obtaining certain licenses and of installing 10 meters a day and "advanc[ing] to" an average of 20 meters a day, which in Plaintiff's view is too many meters for one person. This conduct does not constitute an adverse employment action. Installing meters falls squarely within Plaintiff's job description as a Meter Technician. The fact that performing this work was difficult and required physical work outdoors, or that Defendant unfairly required Plaintiff to continue to do this work rather than allocating it more equitably among all Meter Technicians did not bring about a serious and material change in the terms and conditions of Plaintiff's employment as required to establish an adverse employment action. *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587-88 (11th Cir. 2000) (holding that a teacher who was required to teach more and less desirable classes than other teachers failed to provide evidence of a sufficiently "serious and tangible" action to raise an issue of fact); *Grimsley v. Marshalls of MA, Inc.*, No. 1:05-cv-3252-TCB, 2007 WL 9710142,

at * 4 (N.D. Ga. Sept. 28, 2007) (holding that unfair treatment that included increased workloads, denial of breaks, and having to perform manual labor outside the plaintiff's job description did not constitute adverse employment action under Eleventh Circuit precedent), *aff'd*, 284 F. App'x 604 (11th Cir. 2008); *MacLean v. City of St Petersburg*, 194 F. Supp. 2d 1290, 1299 (M.D. Fla. 2002) ("Increased workloads are an 'ordinary tribulation of the workplace' for which employees should expect to take responsibility.").

The same is true for Plaintiff's 2019 evaluation and the productivity goals it set.  Plaintiff points to no evidence that the review or goals impacted him economically or otherwise materially changed the terms and conditions of his employment.  Except in an unusual case, it is the employer who determines what is needed from its employees, how to allocate responsibilities, and how to assess performance, free from second-guessing by the courts.  *See Edwards v. Nat'l Vision Inc.*, 568 F. App'x 854, 862 (11th Cir. 2014) (holding that placing employee on performance improvement plan was not an adverse action even under the broader "materially adverse action" standard for retaliation claims); *Davis*, 245 F.3d at 1242 ("Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace" and only "rarely" will support a discrimination claim absent a "tangible impact on the terms, conditions, or privileges of employment.").  Plaintiff's complaints relate to "ordinary workplace tribulations," not adverse employment actions.  *See, e.g., Austin*, 791 F. App'x at 825 ("[C]riticism of an employee's job performance that does not lead to 'tangible job consequences' cannot  form the basis

for an ADEA suit."); *Barnett v. Athens Reg. Med. Ctr., Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013) (holding that for a negative evaluation to rise to the level of an adverse employment action it "must actually lead to a material change in the terms or conditions of employment, such as 'an evaluation that directly disentitles an employee to a raise of any significance'") (quoting *Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005)).

Plaintiff also asserts that he was denied a promotion because of his age. Demonstrating the required adverse employment action in this context requires showing that the plaintiff applied for and was qualified for the position in question, but was rejected. *See Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1141 n.7 (11th Cir. 1983); *see also Suarez v. Sch. Bd. of Hillsborough Cty.*, 638 F. App'x 897, 899 (11th Cir. 2016) (holding to the same effect in failure to hire context). Plaintiff concedes he never applied for another promotion after being promoted to Meter Technician. He has therefore failed to establish the required adverse employment action. *See Avera v. United Airlines, Inc.,* 465 F. App'x 855, 861 (11th Cir. 2012) ("[B]ecause it is undisputed that Avera never applied for such a position, he cannot establish any 'adverse employment action' by United."); *McLaughlin v. Brennan*, 3:13-cv-987-J-34MCR, 2016 WL 1271514, at *10 (M.D. Fla. Mar. 31, 2016) ("Although USPS never promoted McLaughlin, the failure to do so does not constitute adverse action because McLaughlin never applied for a promotion after he became a full-time employee in 2005 or 2006.").

<u>Hostile Work Environment</u>

The amended complaint refers to "harassment" and to derogatory racist or xenophobic comments made by coworkers.  To the extent these allegations attempt to assert a hostile work environment claim, proving such a claim would require Plaintiff to show that "(1) he is a member of a protected group; (2) who has been subjected to unwelcome harassment; (3) based on a protected characteristic; (4) that was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that his employer is vicariously or directly liable for the environment." *Ng v. Brennan*, 8:17-cv-509-T-36AEP, 2019 WL 2436581, at *6 (M.D. Fla. June 11, 2019).

In assessing whether alleged actions are sufficiently severe or pervasive, courts look to the totality of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with the employee's job performance.  *E.g., Ng,* 2019 WL 2436581, at *6 (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)).  The workplace must be "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment." *Tonkyro v. Sec'y, Dep't of Veterans Affairs,* 995 F.3d 828, 836-37 (11th Cir. 2021) (internal quotation omitted).

Plaintiff's evidence shows that a single, non-supervisory co-worker named Bobby Harris on approximately five occasions over a three to four-year period called

Plaintiff derogatory names based on his race or national origin, typically out of anyone else's hearing.[3]  Defendant argues that this does not amount to harassment sufficiently severe or pervasive to create a hostile work environment.  Defendant also argues that Plaintiff has not shown that Defendant itself was aware of the hostile environment but failed to take prompt remedial action.  *See, e.g., Smith v. City of New Smyrna Beach*, 6:11-cv-1110-Orl-37KRS, 2012 WL 6721002, at *8 (M.D. Fla. Dec. 27, 2012).

Plaintiff offers no response to these points and therefore has abandoned any hostile work environment claim.  *See, e.g., Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (internal quotation omitted).  Moreover, Harris's conduct, while offensive, is insufficient as a matter of law to support a finding of a work environment "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of Plaintiff's employment." *See Tonkyro*, 995 F.3d at 836-37.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's age and race discrimination claims.

---

[3] Plaintiff's interrogatory answers also assert that Harris "would follow me everywhere I went 2-3 times a week, when I was alone, he would approach me and harass me with various slurs" and "derogatory names," but Plaintiff offers no specifics on these incidents. *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").

### *Retaliation*

Plaintiff claims that after he filed a charge of discrimination with the EEOC in June 2019, Defendant retaliated against him "through an increase in task assignments that surpassed a reasonable workload, an increase in harassing behavior, and undue scrutiny." He focuses again on his 2019 performance evaluation, which stated that Plaintiff needed to increase his productivity to 10 meters per day and to "advance" to the goal of installing an average of 20 meters per day.

Plaintiff may establish a prima facie case for retaliation by evidence that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the two events. *Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020); *Scott v. Sarasota Doctors Hosp., Inc.,* 145 F. Supp. 3d 1114, 1127 (M.D. Fla. 2015). Where a plaintiff has established a prima facie case, the burden shifts to the defendant to offer a non-retaliatory reason for its action. *See Johnson*, 948 F.3d at 1325. The defendant's burden to provide a legitimate reason for its actions is "a low bar to hurdle." *Flowers v. Troup County, Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015). The defendant's burden is "merely one of production, not proof." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

If the defendant meets that burden, then the plaintiff must present "'sufficient evidence to 'allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable.'" *Callahan v. City of*

*Jacksonville, Fla.*, 805 F. App'x 749, 753 (11th Cir. 2020) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)).  The Court is not a "'super-personnel department that reexamines an entity's business decisions.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).  Accordingly, a plaintiff cannot succeed by quarreling with the wisdom of the employer's decision or by showing the decision was based on erroneous facts.  *See Chapman*, 229 F.3d at 1030.  A proffered reason is not a pretext for retaliation unless the reason is false, and retaliation was the real reason.  *Gogel*, 967 F.3d at 1136.

Defendant argues that the 2019 evaluation criticizing Plaintiff's productivity and setting goals for meter installation did not constitute an adverse employment action.  In the context of retaliation, the required "materially adverse action" need not bring about a material alteration in the terms and conditions of the plaintiff's employment as required for a discrimination claim.  It must, however, be "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Plaintiff has offered no evidence the 2019 evaluation led to some more tangible adverse action or effect, nor any explanation as to how it would have dissuaded a reasonable employee from engaging in protected activity.  *See Johnson*, 948 F.3d at 1326-27 ("[A]t no point does Johnson provide any support for his assertions or allege why a reasonable worker in his shoes would have

been dissuaded from reporting allegedly retaliatory conduct because of these negative evaluations."). Negative evaluations and criticism by an employer, without more, do not constitute materially adverse actions. *See also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) (noting in a case under the Americans with Disabilities Act that "[n]egative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case" of retaliation); *Moore v. Shands Jacksonville Med. Ctr., Inc.*, 3:09-cv-298-J-34TEM, 2013 WL 11327134, at *21 (M.D. Fla. Oct. 18, 2013) ("Moore's May 2008 appraisal did not affect his pay rate, and he has presented no evidence suggesting that he was adversely affected in any way by the revised rating."), *aff'd sub nom. Moore v. Shands Healthcare, Inc.*, 617 F. App'x 924 (11th Cir. 2015). Because Plaintiff has pointed to no other adverse effects, Defendant's criticism of Plaintiff's productivity in the 2019 evaluation does not constitute a materially adverse employment action.

Nor do the goals set in that evaluation. Employers are entitled to set goals for their employees to improve their performance. *See Edwards*, 568 F. App'x at 862 (holding that placing an employee on performance improvement plan was not a materially adverse action). Plaintiff offers no evidence, argument, or authority showing that the goals set in the 2019 evaluation harmed Plaintiff or that the harm rose to the level necessary to dissuade a reasonable employee from engaging in protected activity. As for the goal of 20 meters a day, no time frame was set for "advanc[ing]" to this rate, and Plaintiff offers no evidence this goal impacted his

actual job performance or indeed that it was ever enforced in any meaningful sense. Plaintiff has therefore failed to present evidence of a materially adverse action.

Defendant has also presented evidence of a legitimate, non-retaliatory reason for the evaluation and goals:  Plaintiff's supervisors believed that Plaintiff was not as productive as he should be at this point in his career as the senior Meter Technician with four years' experience on the job.  Defendant criticized Plaintiff's productivity in Plaintiff's annual performance evaluation in 2018, *long before Plaintiff's EEOC filing*.  The 2019 evaluation added the observation that Plaintiff needed to learn to manage his time better and should be more careful in setting up his routes so that he is "not going all over town."  Plaintiff's opinion that Defendant's position was wrong or unreasonable does not constitute evidence that it was pretextual.  Defendant is therefore entitled to summary judgment on Plaintiff's retaliation claim.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant Haines City, Florida's Motion for Final Summary Judgement and Incorporated Statement of Facts and Memorandum of Law" (Doc. 34) is **GRANTED**.

(2) "Defendant Haines City's Motion to Strike Affidavits in Opposition to Defendant's Motion for Summary Judgment" (Doc. 45) is **DENIED AS MOOT.**

(3) The Clerk is directed to enter judgment in favor of Defendant Haines

City, Florida and against Plaintiff Jairo Aburaad on Counts I, II, and III of the amended complaint.

(4) Following the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 23d day of March, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**